May it please the court, I'm Ray Viotto. I'm here on behalf of the defendant, the City of Brownsville. We're on appeal on cross motions for summary judgment on liability and appeal from a jury finding of damages against the city in the amount of $2 million. This is a very interesting case I think. Many of the cases that I've handled involving police issues, this one has a number of issues that are I think very important and also leaves me having to pick and choose as to which one I begin with. But it seems to me that there are three key rendition points I think in this case that the city should win on and win on very easily. The one is simply in this circuit a guilty plea precludes a claim for a Brady violation because as this court has said in numerous opinions, the Conroy opinion in which Judge Stewart was a member, that when an accused pleads guilty, he waives his right to a trial and that the Brady right is a trial type right and so that there cannot be a Brady violation if a defendant has pled guilty. And so simply in this case, Mr. Alvarez pled guilty, therefore there cannot be a Brady violation. There's no underlying constitutional violation in this case and so therefore the city should receive a rendition of judgment on the simple fact that there's no Brady violation. There are other reasons why there's no Brady violation in this case. Another is, and I've cited the cases to this court concerning what the standard of culpability is for police officers regarding the disclosure of inculpatory or impeachment type evidence, Brady type evidence to the prosecutors. And I know that there are cases that go back and forth on this, but in all the cases that the Fifth Circuit has taken this issue up, it is essentially a Mooney type standard of fault. It's essentially a due process violation that a deprivation of liberty in this context requires that there be some type of deliberate indifference or deliberate concealment of evidence by the police, that the police are not in the same position as the prosecutors to be able to evaluate whether certain type of evidence is inculpatory or impeachment evidence. And so that the standard of fault in the context of finding a due process violation on the part of the police investigators in gathering up the evidence and providing it to the prosecutors requires that there be a showing of deliberate concealment or some sort of intentional act. And in this case, the underlying officials who were also sued in their individual capacities were all found immune from suit on qualified immunity, on the first prong of immunity, simply because they did not engage in any deliberate concealment. And that's from the chief on down. That judgment was a final judgment, and it wasn't appealed. And so we've argued here that all of those determinations are res judicata. Well, why is it that the district court would have held the city to a higher standard of culpability than the individual officials? That's not clear from the court's opinion. One reason would be clearly established law, would it not? It would be, but if you go on the first prong of immunity, which is whether or not the official committed a constitutional violation in the first place, it would seem to me that that particular decision would carry over to the city. If the standard of culpability is deliberate concealment and the court determined that there is no deliberate concealment for the individuals, then there certainly would… I mean, the court did not expressly grant qualified immunity to the individuals. The court did grant qualified immunity to the individuals. On the grounds that the law was not clearly established. That was part of the court's opinion, but they also… Of course, qualified immunity doesn't apply to the city. That's correct, Your Honor. There are numerous cases that have taken the position, the Supreme Court included, that a due process violation, that the notion of a deprivation of liberty requires that there be something more than mere negligence. And in this particular case, the plaintiff has adduced no more than evidence of mere negligence on the part of the criminal investigating officer who went into the jail and did not think to ask the jail officials for a copy of the video of this particular incident. It's undisputed that he never saw the video and it was never contested or never contended that he was deliberately indifferent or that he had deliberately concealed the video from the prosecutor. He simply did not look at it. He didn't think to look at it. The video was… There was a copy of it that was burned from the server. I know, but I mean the Brady right applies irrespective of whether the city knew it was concealing evidence, right? In other words, if Brady applied, it has an obligation to turn over any kind of information that it has favorable to the defendant irrespective of whether the city or county, whatever it is, knew that it would be exonerated. Isn't that right? It doesn't require the city to have knowledge that is exonerated in it. Well… I'm missing the point. As I understand the Brady case, the Brady case as it applies to prosecutors is a no-fault obligation to provide the information to the accused. And the fact that the prosecutor may not know of it, I mean I don't know quite how this translates into the argument that you're making that the defendant knew and should request it, but there is no requirement in the Brady analysis that the defendant request the exonerated information. Yeah, the defendant need not request it under more recent case law. That is correct, Your Honor. The defendant doesn't have to request it. So, I mean, he didn't, even if he knew that the event was being videotaped, he had no obligation to require it, I mean to ask for it. Well, if he knew that it was there and he didn't ask for it, it's my understanding that if he's on inquiry knowledge of the existence of the evidence, then yes, he would have to ask for it according to at least one of the cases that we cited in the materials. Okay. Well, Brady is always an affirmative. I mean, I don't know, we're going down that road, but I mean Brady is always an affirmative obligation. That's correct, Your Honor. Anyway, I mean, and I think that's the basic question asked. I mean, whether the city knew, county, da-da-da-da, I mean it's an affirmative obligation. So, that, nothing has changed in Supreme Court law as far as that goes. That Brady is an affirmative obligation. Yeah. That's correct. Okay. I mean, your strongest argument is simply that Brady doesn't apply in those circumstances to a guilty plea. Yeah, the argument here is that we're not talking about Brady when we're talking about police gathering evidence. We're talking about a different type of due process obligation. That Brady is not a unitary duty that extends out across the entire spectrum of the evidence gathering procedures down to, you know, the police investigating. Well, I mean, it is. You know, Brady cuts and is there, but at least I read the brief to read. You're arguing, even with all this vitality, you're arguing that the entry of this guilty plea negates whatever flow would come from Brady. Isn't that what you're arguing? Certainly. I mean, not the efficacy of Brady itself and what it holds in and of itself. I thought the argument you're making, as Judge Jolly alludes, is that even with the Brady obligations being what they are, you're arguing, you, the city, that the fact that the young man pled guilty, that the guilty plea had a way of sort of eviscerating, if you will, whatever the other trial obligations might have been, then giving rise to the constitutional violation. Am I understanding you right? That's correct. The Fifth Circuit, in the Conroy case and the Estrada case and a number of the other cases, have basically said that if the accused has pled guilty and has not availed himself of his right to a trial before the jury, then he's not been denied of any right that he has accorded under Brady in trial, that the whole Brady obligation is aimed at making sure that there is available evidence for the judge or the jury, whoever the fact finder may be, to evaluate the evidence and make a fair determination of guilt. Let me ask you this. Suppose in the case, and we get these conditional guilty pleas all the time, and I know that's not this case, but I'm asking you. The defendant pled guilty, say here, but he preserved his right to appeal the Brady claim. So he goes ahead with the Rule 11 and fully pleads guilty, but preserves or doesn't waive the right to appeal on Brady. So he appeals to Brady. Nobody at that point knows about the video, et cetera. It's sort of the routine, the district court. I mean, it comes up here, whatever, based on what's there. It's affirmed. All right, so it's later that this video emerges, so to speak. So would your argument be the same in the context where he did appeal it, he lost because nobody knew it existed and the city didn't know it existed, or is it the essence of the guilty plea itself, you argue, and Rule 11 just wipes it out no matter what? Do you follow me? Yeah, I follow you. That's an interesting question, Judge. Well, that's why I ask it, Counselor. I mean, I'm trying not to just ask a question to be asked. And I'm assuming at that point he's not waived his right to a trial on the Brady issue, that he's reserved his right for a further determination on some issue. Yeah, but, I mean, we get routinely, you know, people who plead guilty below and expressly in the agreement. You know, it says I reserve my right to appeal on the motion to suppress or whatever is left in. But reserving that does not minimize the guilty plea itself, the Rule 11 colloquy itself. That issue is just out there. You see what I mean? And so in that instance, if it came up, nobody knew about the video. And so, you know, it's just affirmed. Court of Appeal just says affirmed. And it's later, you know, the video comes out. I'm just trying to get the full import of your argument about the power of the guilty plea. That would never happen because your guilty plea would be involuntary, and the court would not accept a guilty plea if you conditioned it on the fact that the government has evidence in its file that would exonerate me. Well, I don't know about that. Well, I'm asking counsel, and I'm asking it purposely because the nature of the argument, because what he's citing, he's citing our cases, Matthew and some other circuit cases, not citing or depending on a U.S. Supreme Court case, which is, you know, sort of the heartland of Brady. So I'm not asking it as a speculative question turning on Fifth Circuit law, but on the larger premise of the strong argument you have that no constitutional law of violation. Do you follow what I'm saying? I believe I do, Your Honor. I mean, my way of approaching that is to say if he hasn't had a trial, he hasn't had a Brady violation, it doesn't mean that he doesn't get his conviction set aside. I mean, after all, he may very well be innocent, and he can make some sort of Herrera-type claim that he's being held and he's an innocent man, and that's a violation of his right of liberty. But there's no attack on conviction here. This is 1983. That's correct. And that's a big difference. It is in the sense that it's a different cause of action, but the constitutional right violation is going to be the same regardless of whether it's a habeas proceeding or whether it's a Section 1983 case where his conviction's already been set aside. In fact, in the Estrada case in which Judge Stewart was a member of the panel, you did confront a situation like that where the conviction had been set aside and the individual was claiming damages under 1983, and the court followed its precedent on the effect of the guilty plea. I mean, I'm not saying that the guilty plea may preclude the Brady claim, but it doesn't preclude the fact that the man can claim that he's actually innocent and be set free. See, nobody can claim, I'm actually innocent and I plead guilty. That is an involuntary guilty plea. It would not be accepted by any court acting in accordance with the law. And I certainly understand that argument too, Judge. It's not an argument. It's a fact. He claims he pled guilty because he felt that it was the officer's word against his and that the jury would believe the officer and not his. That's not my question. That, in my view, is not an involuntary plea, but nevertheless, that's the contention. I see I'm almost out of time, and I wanted to hit on the other point that is, I think. Could you really give him an additional two minutes? I mean, I absorbed a good bit of your time with my question, which is still different than my learned colleague is taking you on because there are plenty of motions to suppress and others where people press them and they plead guilty. They say, you know, I'm pleading guilty, but I'm fighting the evidence. And it does not negate those. It's a hypothetical, and it's not this case, but I ask it because underneath this is the point you've made. It's the same constitutional violation that's penalized. But you've done well to respond to our question. That's a valuable argument. So just put some additional time so you can make your argument, and if the other side needs it, you know, we'll give it to you. Thank you, Your Honor. The third rendition point here is deliberate indifference by the final policymaker. No question here that the final policymaker is the chief of police, Chief Garcia. And as we've labored to point out, the video, the members of the police department, two different suborganizations within the police department were involved in investigating this underlying incident. One was the Criminal Investigation Division, which took the jailer's complaint and then brought it to the prosecutor, and there eventually was an indictment brought. The other was the jail staff, and they have an internal policy that if there's ever force used, then they do a use-of-force report, and it goes up the chain of command to the police, or to the police chief. The police chief would have reviewed that use-of-force report in his capacity as backstopping whether or not his officials are using excessive force on the detainees. He wasn't backstopping whether or not the prosecutorial team, that is the prosecutor and whatever police are working to work up the criminal case, had provided all the information so that the Brady obligations would be satisfied. That report came to the chief's desk, and there's no evidence that's conceded that the chief never looked at it. The fact that he didn't look at it, I think, is dispositive of whether he was deliberately indifferent to not turning over Brady material, but there are other reasons too. It's my contention that that video does not contain Brady material. It's inculpating, it's not exculpating. When you look at all the footage of it, and there's nothing to suggest in the use-of-force report that the criminal investigation team would not have obtained a copy of whatever information there was and provided it to the prosecutor, that the chief was not on any kind of knowledge, even inquiry knowledge, as to what the prosecution team had gathered and was going to submit prior to the indictment in this case. I see my time is up, and I'll reserve my five minutes. Okay. You've reserved your time. Thank you. All right. Mr. Lucio. Thank you, Your Honor. May it please the Court, Counsel. Eddie Lucio here on behalf of the plaintiff, the appellee, George Alvarez. Very briefly, some real quick history of the case. This all started back in 2005 when George Alvarez was barely a ninth-grade special education student at a local public school. He was arrested for the misdemeanor offense of theft by the appellant, Bronzeville Police Department. He was then taken to the local city jail where it is our position, our belief, and the basis of this case that he was then assaulted by the appellant's jailer. The police department at that time then initiated a felony criminal assault charge against Alvarez, not against its jailer, who was the one that committed the assault. And at the same time that they're initiating this fabricated charge against Mr. Alvarez, they're also creating a video that shows that he is actually innocent, and they are in control of this video. They're the ones that are in control of the criminal prosecution of the criminal case, the charging of the case, and they're also in control of the evidence, which is an important distinction which I will get into later. The video was not turned over because everybody in the department, every supervisor who had testified, said we are not supposed to hand it over, we are not supposed to turn it in. Okay, I don't want to tell you how to do your argument, but I promise you we're familiar with the procedural history on the case, so I don't want you to not have enough time to make sort of the core points here given how it's primed up. We're familiar with the video, when it was disclosed, etc., etc. The city's main argument is to say the guilty plea basically waived, so you don't have to answer that right at this moment, but I just want to fast forward you a little bit out of the history of the case and get us in there because there's a lot to cover. Thank you, Your Honor. Point taken. The issue I want to address is the one that is most worrisome, and which is the first one that the opposing counsel raised, and this is basically whether in Texas a police department can knowingly withhold actual innocence evidence and where they can do that and where they should be allowed to escape all liability whenever the defendant pleads. We believe that this circuit has not held that that is permissible. Now, the reason that I want to address it in terms of the original case that this court decided back in 2000, Matthews v. Johnson, and all the cases that followed after that. None of those cases have ever dealt, number one, with the issue of actual innocence. This is the very first one. In almost all of those cases, as this court has already noted, the criminal defendant was coming to the Fifth Circuit asking that his plea be undone, that he be allowed to withdraw it because it had not been done, and that is an overwhelming burden. In this case, this is the first one where the plea has already been held to be pursuant to Texas law, to be invalid, to be unconstitutional pursuant to Texas law, and because the Texas Court of Criminal Appeals found Mr. Oliver is actually innocent already. So this is the first time that this court is addressing that new issue. So that's the very first distinction I'd like to make in terms of why this case is different. The second one I touched upon a little bit also, that all the other cases were writ cases. Again, this is not a writ case. This is a civil rights 1983 litigation case. The third issue I'd like to address is when Matthews first decided this case, it made a point of acknowledging that Texas, that the defendant in Texas who pleas does not waive his right to Brady evidence. In fact, even if it's not in the plea agreement, the way Texas law is, the defendant still has that right afterwards. The question is not whether the police have to turn over the information, but the question is whether their conduct amounted to violation of the United States Constitution. I mean, obviously you could come back from a number of ways and say the government withheld evidence and my man is actually innocent and have a cognizable claim under state law. But what you've got to do is describe, in my opinion, describe what the constitutional right is in Brady. Where does it come from? What does it protect? And whether it protects in these circumstances. And you are kind of going up a steep hill on that because our case law has indicated pretty much that it is not a claim that arises in the course of a guilty plea. Well, and I think one of the distinctions that I'd like to raise here is that this is the first case also that we're addressing the withholding by the police agency, not the prosecutor. What difference does that make? Well, here's where I think it makes a difference, Your Honor. With – in Brady v. Maryland and with this court's decisions in Matthew v. Johnson, the Brady rights are still protected because at the time that the person goes to trial, the prosecutor – so far the only issues that have been addressed have been addressed with the prosecutor being the one that has the evidence. The prosecutor is aware of the trial schedule. He's aware of his Brady disclosures of having to disclose that before the trial. However, in this case, if it's the police agency that's holding the file and if we apply that rationale to the police agencies, the police departments will never know when cases are going to trial. The prosecutor would, so he would know enough, hey, I'm holding this evidence, so it's time for me to hand it over. But if we apply that rationale that they don't have to turn it over immediately, then that puts upon every police department in the entire state that they need to know exactly when this case is going to trial. But again, from my point of view, you're arguing for a new constitutional right beyond Brady. Well, I don't know that – Brady – I mean, Brady is the constitutional right upon which you were granted relief and the one upon which you won your lawsuit, and that is the one that you've got to dance with. That's the one that brought you to the dance, and you've got to dance with it. And so what is a Brady constitutional claim? And all the courts have indicated is that it is one that arises in the course of trial when it evaluates the constitutional right to due process when it is not revealed to you that you have an exonerated defense. On the other hand, if somebody pleads guilty, they think they're guilty, just as your client. He thought he was guilty, or for some reason he pled guilty. I mean, notwithstanding what the cameras may have said, he thought he was guilty. He thought he'd hit the man. He thought he'd assaulted him. I mean, that's – And I may not be able to understand the court's question correctly, but I think this case is distinguishable from Brady, and I acknowledge that Brady is a trial – says that the person is entitled to evidence at the time of trial, and I'm aware of the Supreme Court's decision in United States v. Reese pulling or doing the Brady analysis in the context of a plea. You said you're distinguishing this case from Brady. You don't want to do that. You want to say that Brady cannot be distinguished from this case. And I misspoke. That is the way I'm trying to say it, Your Honor. I'm saying it the wrong way, and I apologize. I'm nervous. This is a Brady violation. I don't think that anything that the Fifth Circuit has done in any way through its decisions have changed the police officer's obligation under Brady to turn the evidence in. I don't think that the mere fact that he pled absolves them of their Brady obligation. How do you fit Conroy into that statement you just made? Well, with Conroy, for example, the court never addressed the issue of whether the evidence was not turned in deliberately. I think that's an important distinction to make. Here we have a purposeful – I'm not saying it's malicious or done with ill will, but it's a purposeful withholding of evidence. But doesn't Conroy tell us that, irrespective of purpose or not, that the Brady material following a guilty plea applies equally to a 1983 as it would to an impeachment? And I apologize, Your Honor. I don't know that Conroy stood for that proposition. Conroy might have gotten it wrong, but we're bound by it, aren't we? I understand that, Your Honor, which is why I'm trying to say that this case is not covered by Conroy because of the differences in terms of it being a police agency, it being a case where the gentleman was found actually innocent, it being a case where the withholding was pursuant to a policy, it being a case where, considering Texas law, the state in which he pled, she was not waiving his right in Texas to Brady evidence at the time of his plea. In Texas, at the time it was pled. If he had asked a lawyer, am I waiving my right to Brady evidence, any lawyer would have to tell him, no, you are not because you don't waive those Brady rights here in your plea in Texas. He didn't waive them. He didn't waive them. The rights to Brady evidence? Your man didn't waive the rights to Brady evidence. He just never had the rights to Brady evidence. I mean, that's what the argument is. Well, in Texas… You can't waive a right you don't have, and that's what we argue. If he has the right, he didn't waive it. In Ex parte Texas, the Texas Court of Criminal Appeals held that he has the right to Brady evidence when he pleads, that he – that the plea does not absolve him, that he actually has that right. And as this court's aware, the state courts set the ceiling in terms of interpreting the Constitution. So right now, any criminal defense attorney would tell a defendant in Texas, you have the right to Brady evidence at the time of plea, and it would not be an inaccurate statement. That would be a correct statement of the law, that he does have the right to exculpatory Brady evidence at the time of the plea, not just impeachment. Because in Texas, they've interpreted United States v. Reese differently to include that right as well. Not the Supreme Court of Texas. It's the Texas Court of Criminal Appeals that's interpreted the… The Texas Court of Criminal Appeals. Yes, yes. They've interpreted it that way or in… In other words, the highest court of the state of Texas in criminal law has said that you have Brady rights. You can assert Brady rights to cancel a guilty plea. Correct your honor. They've held that already in Ex parte Lewis, Ex parte Johnson. And to take it a little step further, Texas also in Ex parte Tully has recognized that an actual innocence claim is in and of itself a constitutional violation as well. So a freestanding actual innocence claim exists in Texas based on the highest court in Texas interpretation of the Constitution. So that's also another distinction that… Of course, I mean that's not the right. It's not a federal right. Excuse me? Not a right under the federal Constitution is interpreted by the federal courts. I'm not sure, your honor. There's a recent opinion that I think calls that into question. United States v. Troy. Troy Davis, I believe. Go ahead and tell me about that. And your honor, I've read that opinion, and I'm not sure which side. And I apologize. My understanding is that it did recognize a freestanding actual innocence claim, but in the context of a death penalty case only, I believe. It was only limited to that situation. You have to jump through a lot of hoops in the federal court to get to actual innocence. Yes, yes. So in Texas, it's not limited to death penalty cases and it's not limited to trials. The person has it even at the time of plea also, so that is a recognized constitutional claim in Texas as well. Before I move on from that issue, the only other point I'd like to bring is basically the trend or the rules in Texas requiring the prosecutors, law enforcement, the Texas Rules of Disciplinary Conduct, the Ethical Rules, the Morton Act, which was recently passed in response to the exoneration of several innocent defendants in Texas, some of whom plead as well. The next issue I'd like to get into with the court's permission is the issue of whether the video is even exculpatory to begin with. I think the video speaks for itself. We believe that it is exculpatory. The issue there that the opposing counsel has raised that no assault took place. Well, aren't we bound by the Texas Court of Criminal Appeals that found he was not guilty? So it doesn't matter whether it's exculpatory or not. Yes, Your Honor. That's my position. That's the argument I have to make on that one. So is there no question not to move into the issue of whether there's a policy that existed? Here everybody stated, and the one that's most important, the police chief himself, and it's not disputed that he is the final policymaker for the city. He's admitted to that. Here it was the chief himself who acknowledges that… What is the policy? The policy is to, for all the people that are involved in an internal investigation, to not disclose evidence even if it's exculpatory. Even if it's Brady evidence, they are not to disclose it. There's one exception to that, and that exception would be – and there's a policy, and they understand this policy as well – that if the chief orders them to do it. Now the chief says he's aware that all his subordinate supervisors are not to disclose exculpatory evidence. He's aware of that policy. He promulgates it. He has full knowledge of it. He's also aware of the exception that he's the only one that can authorize it. Now this case became extremely dangerous because knowing all that, the police chief here, though it's even written in their policy manual that he has the responsibility to review all these records, had developed a pattern of practice. In his deposition, he admitted basically that out of the 12 jail or assault videos that were there, files that were there, he had only seen two, I believe, out of 12 or 13 of those. So he had a practice, which he acknowledged, of basically never looking at these files, even though that he knew that he was supposed to do that in case of a Brady violation or in case there was Brady evidence in there. He's also testified that he knew that Brady material could be in those files, that it was foreseeable. And even the appellant's own expert testified that internal investigation files as well could have Brady material in them. So with full knowledge that there's a nondisclosure policy, he then set up another practice, which if he's the final policymaker, that practice in itself becomes policy. So then he sets up a policy of not reviewing them. Now, it's that policy that basically led to him not looking at these files and not looking at what was going on within his own department. When asked if he had seen one of the videos that happened before Mr. Alvarez were this chokehold, which he says was not authorized, he stated no. And he also stated, had I seen that video, and this is before Alvarez was put in a chokehold, he said I would have instructed every jailor never to do that, thereby preventing this incident from ever happening in the first place, seeing as how it was an unauthorized chokehold. Here we believe that this policy of not disclosing any of them itself is facially unconstitutional. Now, I think that's an important distinction because if it is facially unconstitutional, then deliberate indifference is implied. If it's facially unconstitutional, basically it means that the city is aware of the policy and aware that violations could occur just by the mere existence of the policy itself. Now, here I think a policy that says do not disclose exculpatory information, and it does not limit it to pleas. It just basically says do not disclose it under any circumstances unless I authorize it. I think a policy like that combined with the fact that the chief is not looking at any of these files in and of itself makes this policy unconstitutional on its face. Nonetheless, here there is evidence of deliberate indifference in the fact that everybody was aware of the existence of the policy and their failure to turn it over was basically acting in accordance with this policy. When asked why didn't you turn it over, it's not because they say we forgot or I lost it. They've testified we don't turn it over because our policy says not to turn it over. I think you have a strong argument on that. So with regards to the deliberate indifference and with regards to the policy, I believe that we've established those as a matter of law. With regards to causation, I think we're equally strong also because the causation requirement is different when it's the police chief involved, when it's the policymaker that's involved. Here pursuant to the Supreme Court's decision in Board of County Commissioners v. Brown where the court basically stated that where the decision that caused the violation was that of the final policymaker, then no questions of fault or causation arise. And that's exactly the case that we have here. I think causation is established as a matter of law considering that it's the final policymaker whose decision not to look at these files in accordance with the nondisclosure policy caused the violation. All right. Thank you, sir. Thank you. I'll rebuttal back to you, Mr. Miyata. May I ask that somewhere during your time here you address to what extent we are bound by Conroy and how that helps your case? I'll address that right now, Your Honor. I believe that this court is bound by Conroy, and I believe that it is dispositive in this case because the guilty plea precludes there being a Brady violation. There's no violation of Brady if the individual has waived his right to trial and he never went to trial here. Well, what about the application to 1983? Well, I know that there is an unpublished opinion called Estrada that the Conroy rule was cited and the case was dismissed. There was reference in footnote number three of that decision that the same rule applied in that situation. So I would assume that that rule would be the same. That's my position. You're bound by Conroy. Right or wrong, Conroy tells us that even for a 1983 case, the plea of guilty knocks it out as applicable. Conroy is not a 1983 case, but what Conroy does is it holds there's no constitutional violation, and in order to recover damages under 1983, there has to be an underlying constitutional violation. So that would be my response to that, Your Honor. Very quickly on the issue of deliberate indifference, there was all kinds of remarks here about policies that anything that is discovered through an internal review is forbidden to be turned over. There's no evidence of that. What we had here was a use of force report that was generated. Well, now he says there is a policy and an acknowledged policy that the chief says any kind of internal investigation that has exonerated evidence in it, I do not want it turned over to the prosecutors. Not in the record. Absolutely not in the record. Well, he says it. Where does he get it? Where did it come from? I don't know where he got it, but we've made references in our briefing to where he says that that exists and it doesn't. There is no written policy. There's no actual policy. There was some reference to the confidentiality of an internal affairs investigation, which is begun when the chief finds that an officer has committed a policy violation. It then goes over to internal affairs investigation, and there is some confidentiality attached to that. The supervisor over internal affairs investigation said, if I knew that the criminal prosecution team, the CID group, were not aware of some piece of evidence that we as IA officers discovered, we would let them know of the existence of it. This video never got into an IA file. It was there in a server in the city jail where there were video recorders up all over the place. The CID people that looked at this could have seen the video recorders and could have gone into the office of the jailers themselves and burned themselves a video of it. It's not like it's a – that the whole server then became part of an IA investigation that was then locked up. All these points are made in our briefing, but the fact remains is that the chief testified very clearly that the jail supervisor should have told the criminal investigation officer, hey, by the way, we've got a video of this incident. You want it? But he thought, well, you know, it's their job to ask for it if they want it, so he didn't bother to mention it. Was that negligence on the part of the jail sergeant? Probably. But the jail sergeant is not part of the criminal investigation team. I mean, to the extent that there is some Brady obligation, it extends to the prosecutor, arguably extends to police officers who are in close working relation with the prosecutor about what the case is about, but this court's cases have referred to Brady obligations being attaching to a criminal investigation team. It doesn't attach to the entire police department, and so if somebody happens to be in the police department and is aware of something, that he then is charged with some absolute duty, no fault to have to go over and turn it in to a criminal investigator. Also, I think it's important to note that at the time that this internal investigation, this administrative investigation that didn't make it into an IA file was going on, there hadn't been an indictment. There hadn't been charges that had been pressed. It was a matter of two days after this incident occurred. The jailer had called a patrol sergeant in and made a report, but the indictment in this case didn't even come down for another six weeks, so do we even have a criminal case on file? I mean, at what point does the Brady obligation arise? There may not have been a criminal investigation, so at the time that this report that the chief didn't see crossed his desk, we didn't even have a criminal investigation on file. So my view of this, Your Honor, is that there is no deliberate indifference on these facts, Brady violation or not. And I see my time is up, and I'll see you back at the podium. Thank you, Your Honor. Thank you, counsel. Thank you. Argument in the briefing on both sides. The case will be submitted. Before we take up the last case, Red Hook.